## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## EASTERN DIVISION

| | |
|---|---|
| NEUSE REGIONAL WATER AND SEWER AUTHORITY,<br><br>                Plaintiff,<br><br>    v.<br><br>3M COMPANY; ANGUS FIRE; AGC CHEMICAL AMERICAS, INC.; AGC INC. F/K/A ASAHI GLASS CO.; ARCHROMA MANAGEMENT LLC; ARCHROMA US, INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE PROTECTION CO.; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CHEMICALS INC.; CHUBB FIRE, LTD.; CLARIANT CORP.; CORTEVA, INC.; DEEPWATER CHEMICALS, INC.; DOE DEFENDANTS, JOHN 1-49; DUPONT DE NEMOURS, INC.; DYNAX CORP.; E.I. DU PONT DE NEMOURS & COMPANY; KIDDE PLC INC.; NATIONAL FOAM, INC.; NATION FORD CHEMICAL COMPANY; RAYTHEON TECHNOLOGIES CORPORATION F/K/A UNITED TECHNOLOGIES CORPORATION; THE ANSUL COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; TYCO FIRE PRODUCTS, LP; AND UTC FIRE & SECURITY AMERICAS CORP.,<br>                Defendants. | Civil Action No. 4:23-cv-114<br><br>**NOTICE OF REMOVAL** |

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified individually by full name), by and through undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court for Lenoir County, North Carolina ("Lenoir County Superior Court"), to the United States District

Court for the Eastern District of North Carolina.  As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.      Plaintiff, Neuse Regional Water and Sewer Authority, seeks to hold Tyco and certain other Defendants liable based on their alleged conduct in designing, manufacturing, marketing, and/or selling aqueous film-forming foam ("AFFF") that Plaintiff alleges was used for firefighting and fire-training activities, thereby resulting in contamination.

2.      Specifically, Plaintiff alleges that Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), and that the use of these substances caused contamination of the Plaintiff's wells, water sources and supply, and water supply and delivery system infrastructure ("Plaintiff's Property").

3.      At least some of the AFFF that gives rise to Plaintiff's claims has been manufactured by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF").  Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product.  Under the federal officer removal statute, 28 U.S.C. § 1442, Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum.  *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016).  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed."  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

2

## BACKGROUND

4.      This action was filed on June 8, 2023, in Lenoir County Superior Court, bearing Case No. 23-CVS-431 (Ex. A, Complaint).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 113(a) and 1441(a) because Lenoir County Superior Court is located within the Eastern District of North Carolina.

5.      Tyco Fire Products LP was served with the Summons and Complaint on June 12, 2023.  Chemguard, Inc. has not been served in this action.  This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

6.      Tyco is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1).  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Hilbert v. McDonnell Douglas Corp.,* 529 F. Supp. 2d 187, 195 (D. Mass. 2008).

7.      Plaintiff generally alleges that Defendants, including Tyco, have designed, manufactured, marketed, distributed, and/or sold AFFF products, which contain PFAS.  (Ex. A, Compl. ¶ 5).  Plaintiff alleges that the AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants, due to its use in firefighting activities, has caused contamination of Plaintiff's Property.  (*Id.* ¶¶ 6–8).  Plaintiff further alleges that it has incurred and will incur costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property. (*Id.* ¶¶ 9, 89, Prayer for Relief at 32–33).

8.      Plaintiff seeks to recover costs and damages associated with the alleged contamination of Plaintiff's Property.  (*Id.* ¶¶ 9, 89).  In addition to compensatory damages, Plaintiff also seeks punitive damages, consequential damages, and pre- and post-judgement interest.  (*Id.* ¶ 178, Prayer for Relief at 32–33).

9.      Plaintiff asserts claims against all Defendants for public nuisance (*id.* ¶¶ 90–102), private nuisance (*id.* ¶¶ 103–106), inadequate design (*id.* ¶¶ 107–117), failure to warn (*id.* ¶¶ 118–129), negligence (*id.* ¶¶ 130–141), breach of implied warranty of merchantability (*id.* ¶¶ 142–154), trespass (*id.* ¶¶ 155–162), and civil conspiracy (*id.* ¶¶ 163–166).  Plaintiff also brings a claim for fraudulent transfer against Defendants E. I. Du Pont De Nemours and Company and The Chemours Company FC LLC only.  (*Id.* ¶¶ 167–177).

10.     Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case and is filing a copy with the Clerk of Lenoir County Superior Court.

11.     By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

12.     Tyco reserves the right to amend or supplement this Notice of Removal.

### REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1).

13.     Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer.  Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) the plaintiff's claims are based on the defendant's conduct "acting under" the United States, its agencies, or officers; (c) the plaintiff's claims are "for or relating to" the defendant's acts under color of federal office; and (d) the defendant raises a colorable federal defense.  *Papp*, 842 F.3d at 812; *accord*

*Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

14.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.  To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal.  *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

15.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the Plaintiff's injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against Tyco and other manufacturers); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF).  The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiff's injuries are caused, at least in part, by MilSpec AFFF.  *See In re AFFF Prods. Liab. Litig.*, 2019

WL 2807266, at *2–3 (D.S.C. May 24, 2019) ("MDL Order 1"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

### A.    MilSpec AFFF

16.    The United States Naval Research Laboratory developed AFFF in the 1960s to quickly suppress and extinguish liquid fuel fires, which are an ever-present risk in aviation and military environments. Since the late 1960s, following catastrophic fires aboard the aircraft carriers USS *Forrestal* in 1967 and USS *Enterprise* in 1969,[2] the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to put out fires, save lives, protect property, and train its personnel. Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

17.    The manufacture and sale of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

since then.[4]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement.  Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5]  The MilSpec designates Naval Sea Systems Command, part of the Department of Defense ("DoD"), as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

18.    From its inception until 2019, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."  All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here.  This requirement has been in force for virtually the entire time period at issue in the Complaint.  In 2019 the MilSpec removed the requirement of "fluorocarbon" surfactants, but the DoD has acknowledged that no AFFF product can satisfy the stringent performance requirements of the MilSpec without the use of PFAS-containing surfactants.  Even today, the AFFF MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.  Indeed, the AFFF MilSpec recognizes that it is

---

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] *Id.*

not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."

19.    Seymour Johnson Air Force Base (the "Base") in Goldsboro, North Carolina is a military facility that has used MilSpec AFFF, including MilSpec AFFF manufactured by Tyco, since the 1970s.  The Base is located near the Neuse River, and surface water and groundwater from the Base drains into the Neuse River upstream of Plaintiff's water intakes.  MilSpec AFFF used at the Base has contributed to the PFAS contamination upon which Plaintiff's claims are based.

**B.    All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.**

*1.    The "Person" Requirement Is Satisfied.*

20.    The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and corporation, respectively) meet the definition of "persons" under the statute.  For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships."  *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

*2.    The "Acting Under" Requirement Is Satisfied.*

21.    The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer.  *Papp*, 842 F.3d at 812.  The phrase "acting under" is to be "liberally construed in favor of the entity seeking removal."  *Sawyer*, 860 F.3d at 255 (internal quotation marks omitted).  "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*."  *Id.* (emphasis in original).

22.     The requirement of "acting under" a federal officer is met here because the alleged PFAS contamination that is the focus of Plaintiff's claims stems in part from MilSpec AFFF, a vital product provided by Tyco that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137.  MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137.  The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[7]  Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF.  *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, 2019 WL 2807266, at *2 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5 (holding likewise in case involving MilSpec AFFF used at Part 139 airport); MDL Order 3, at 3–6 (same).  If Tyco and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

23.     In designing and manufacturing the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers.  Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF

---

[7] *Fulfilling the Roosevelts' Vision*, *supra* n.3, at 37.

formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF

products in question were subject to various tests by the United States Navy before and after being

approved for use by the military and for inclusion on the Qualified Products List maintained by

the DoD.[8]

### 3.    The "Under Color Of Federal Office" Requirement Is Satisfied.

24.    The third requirement, that the lawsuit be "for or related to" the defendant's actions

taken "under color of federal office," is satisfied when there is a "connection or association"

between the defendant's challenged actions and the federal office.  *Papp*, 842 F.3d at 813.  As with

the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low."  *Isaacson*,

517 F.3d at 137. [9]

25.    Here, Plaintiff alleges that the use of PFAS in AFFF is the source of its injuries.

Tyco contends that some of the AFFF giving rise to Plaintiff's claimed injuries was MilSpec

AFFF, and that the use of PFAS in MilSpec AFFF was required by military specifications.  As a

result, Plaintiff's claims against Tyco are connected to its acts taken under color of federal office.

*See Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use

of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1,

2019 WL 2807266, at *3 (element satisfied where "[Plaintiff]'s claims arise out of use of AFFF

products that it claims Tyco manufactured and sold, and for which the U.S. military imposes

MilSpec standards."); MDL Order 2, at 5 (element satisfied where AFFF products, "for which the

military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); MDL Order

---

[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[9] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

3, at 5–6 (same).  It is irrelevant that Plaintiff does not expressly contend that it has been injured by MilSpec AFFF.  Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists."  *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4.     The "Colorable Federal Defense" Requirement Is Satisfied.

26.     The fourth requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

27.     At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"  *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted).  "A defendant 'need not win his case before he can have it removed.'"  *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise "colorable federal defense").  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue."  *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010).  "Precisely in those cases where a

plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

28.    Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.  Tyco has satisfied these elements for purposes of removal.

29.    The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect.  *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989).  Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping."  It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling.  Those specifications are "reasonably precise" in requiring the use of PFAS.  As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family.  Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification.  In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of

the product's PFAS content and of the alleged risks associated with PFAS in the product. *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

30.    With respect to the second requirement, Tyco's products have appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See id.* at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

31.    Regarding the third requirement, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[10] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained

---

[10] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[11]  By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."  In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.  More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA.  Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[12]  Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[13]  *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, 2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a

---

[11] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[12] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[13] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

32.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks.  *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)).  Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies.  *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

33.     Tyco's use of PFAS in MilSpec AFFF was required by military specifications.  By seeking to impose tort liability on Tyco for alleged injuries to Plaintiff that were caused in whole or in part by Tyco's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military.  The government contractor defense precludes such an attack.  *See Boyle*, 487 U.S. at 509.

34.     In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by Tyco and other MilSpec AFFF manufacturers presents genuine issues of fact for trial.  *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022).  A defense that presents triable issues is by definition better than merely "colorable."

WHEREFORE, Tyco hereby removes this action from Lenoir County Superior Court to this Court.

This the 11th day of July, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: _____
Christopher J. Blake
NC State Bar No.16433
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
chris.blake@nelsonmullins.com

*Counsel for Tyco Fire Products LP and Chemguard, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing *Notice of Removal* was served upon counsel of record by electronic mail, as follows:

A.  Charles Ellis
Ward & Smith, P.A.
Post Office Box 8088
Greenville, NC  27835-8088
Docket@wardandsmith.com
ace@wardandsmith.com
*Counsel for Plaintiff*

Scott Summy
Cary McDougal
Carla Burke Pickrel
Jason Julius
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  752194281
ssummy@baronbudd.com
cmcdouglas@baronbudd.com
cburkepickrel@baronbudd.com
jjulius@baronbudd.com
*Counsel for Plaintiff*

And by United States mail, first class, postage prepaid to:

Philip F. Cossich, Jr.
Brandon J. Taylor
Darren Sumich
David A. Parsiola
Luana N. Smith
Cossich, Sumich, Parsiola & Taylor, LLC
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
*Counsel for Plaintiff*

J. Harold Seagle
Seagle Law, PLLC
P. O. Box 15307
Asheville, NC  278813
*Counsel for Plaintiff*

1

Daniel L. Ring
Tyler D. Alfermann
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
dring@mayerbrown.com
talfermann@mayerbrown.com
*Counsel for Defendant 3M Company*

Peter Condron
CROWELL & MORING
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-259
pcondron@crowell.com
*Counsel for Defendant AGC Chemicals Americas Inc. and AGC, Inc.*

Heidi Levine
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603\
Hlevine@sidley.com
*Counsel for Defendant Arkema Inc.*

Melanie Black Dubis
Charles Raynal
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 400
Raleigh, NC 27601
melaniedubis@parkerpoe.com
Charlesraynal@parkerpoe.com
*Counsel for Defendants Archroma Management LLC, Archoma U.S., Inc. and Clariant Corporation*

John Wellschlager
DLA PIPER LLP (US)
The Marbury Building
6224 Smith Avenue
Baltimore, MD 21209-3600
John.wellschlager@dlapiper.com
*Counsel for Defendant BASF Corporation*

2

Michael L. Carpenter
GRAY LAYTON KERSH SOLOMON FURR & SMITH, P.A.
Post Office Box 2636
Gastonia, North Carolina 28053-2636
mcarpenter@gastonlegal.com
*Counsel for Defendant Buckeye Fire Equipment Company*

Jonathan I. Handler
Keith H. Bensten
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
jihandler@daypitney.com
kbensten@daypitney.com
*Counsel for Defendants Carrier Global Corporation, Kidde-Fenwal, Inc., Kidde
PLC, Inc., Chubb Fire, Ltd. And Raytheon Technologies Corporation*

Jonathan Blakley
GORDON REES SCULLY MANSUKHANI, LLP
One North Franklin, Suite 800
Chicago, IL 60606
jblakley@grsm.com
*Counsel for Defendant ChemDesign Products Inc.*

John Parker
Oliver Twaddell
GOLDBERG SEGALLA LLP
711 Third Avenue, Suite 1900
New York, NC 10017
jparker@goldbergsegalla.com
otwaddell@goldbergsegalla.com
*Counsel for Defendant Chemicals, Inc.*

Kat Hacker
BARTLIT BECK LLP
1801 Wewatta, Suite 1200
Denver, Colorado 80202
kat.hacker@bartlitbeck.com
*Counsel for Defendants Corteva Inc. and DuPont de Nemours Inc.*

Kurt D. Weaver
WOMBLE BOND DICKSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
kurt.weaver@wbd-us.com
*Counsel for Defendant Deepwater Chemicals, Inc.*

3

Kirk G. Warner
Clifton L. Brinson
Addie K.S. Ries
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN,
L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
kwarner@smithlaw.com
cbrinson@smithlaw.com
aries@smithlaw.com
*Counsel for Defendant Dynax Corporation*

David R. Erickson
Brent Dwerlkotte
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
derickson@shb.com
bdwerlkotte@shb.com
*Counsel for Defendants E. I. duPont de Nemours & Company and The Chemours*

Keith E. Smith
GREENBERG TRAURIG, LLP
Three Logan Square
1717 Arch Street, Suite 400
Philadelphia, PA 19103
smithkei@gtlaw.com
*Counsel for Defendant National Foam Inc.*

Ethan R. Ware
WILLIAMS MULLEN
P. O. Box 8116
Columbia, SC  29202
eware@williamsmullen.com
*Counsel for Defendant Nation Ford Chemical Company*

Angus Fire Armour Corporation
c/o The Prentice-Hall Corporation System, Inc.
251 Little Falls Drive
Wilmington, DE 19808

The Ansul Company
c/o CT Corporation
1999 Bryan Street, Suite 900
Dallas, TX 75201

4

This 11th day of July, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: _____

Christopher J. Blake
NC State Bar No.16433
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799

chris.blake@nelsonmullins.com

5

# EXHIBIT A

(Filings, Lenoir Co. Superior
Court Case No. 23-CVS-431)

# STATE OF NORTH CAROLINA

_____ LENOIR _____ County

*File No.*
23 CVS 431

In The General Court Of Justice
☐ District   ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>NEUSE REGIONAL WATER AND SEWER AUTHORITY<br><br>*Address*<br>2811 Barrus Road<br><br>*City, State, Zip*<br>LaGrange, NC                    28551 | **CIVIL SUMMONS**<br>☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**<br><br>G.S. 1A-1, Rules 3 and 4 |

**VERSUS**

| | |
|---|---|
| *Name Of Defendant(s)*<br>3M Company, et al. | *Date Original Summons Issued*<br><br>*Date(s) Subsequent Summons(es) Issued* |

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1*<br>Tyco Fire Products, LP<br>c/o CT Corporation System<br>160 Mine Lake Ct., Suite 200<br>Raleigh, NC 27615 | *Name And Address Of Defendant 2* |
|---|---|

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**

**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Scott Summy<br>Baron & Budd, P.C.<br>3102 Oak Lawn Ave., Suite 1100<br>Dallas, TX 75219 | *Date Issued*<br>06-08-23 | *Time*<br>1:30   ☐ AM ☒ PM |
|---|---|---|
| | *Signature*<br>Dari B. Danly | |
| | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time*<br>☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

| ▓▓▓▓▓▓▓▓▓▓▓ | **RETURN OF SERVICE** | ▓▓▓▓▓▓▓▓▓▓▓ |

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid
$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA

LENOIR COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
23-CVS- 431

FILED

2023 JUN -8 P 1: 19

LENOIR CO., C.S.C.

BY_____) DBD

| | | |
|---|---|---|
| NEUSE REGIONAL WATER AND SEWER AUTHORITY, | ) ) ) | |
| Plaintiff, | ) ) | **COMPLAINT** |
| vs. | ) ) ) | |
| 3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.; ANGUS FIRE; AGC CHEMICAL AMERICAS, INC.; AGC INC. F/K/A ASAHI GLASS CO.; ARCHROMA MANAGEMENT LLC; ARCHROMA US, INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE PROTECTION CO.; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD; CHEMICALS INC.; CHUBB FIRE, LTD.; CLARIANT CORP.; CORTEVA, INC.; DEEPWATER CHEMICALS, INC.; DOE DEFENDANTS, JOHN 1-49; DUPONT DE NEMOURS, INC.; DYNAX CORP.; E.I. DU PONT DE NEMOURS & COMPANY; KIDDE PLC INC.; NATIONAL FOAM, INC.; NATION FORD CHEMICAL COMPANY; RAYTHEON TECHNOLOGIES CORPORATION F/K/A UNITED TECHNOLOGIES CORPORATION; THE ANSUL COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; TYCO FIRE PRODUCTS, LP; AND UTC FIRE & SECURITY AMERICAS CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT**

Plaintiff Neuse Regional Water and Sewer Authority (hereafter "NRWASA" or

"Plaintiff"), by and through its undersigned counsel, brings this action against Defendants 3M

1

Company, E. I. DuPont De Nemours and Company, The Chemours Company, The Chemours

Company, FC, LLC, Chemguard, Inc., Tyco Fire Products, LP, Ansul Company, National Foam

Inc., Angus Fire Armour Corporation, Buckeye Fire Equipment Company, AGC Chemical

Americas, Inc., AGC Inc. f/k/a Asahi Glass Co.,  Archroma Management LLC, Archroma US,

Inc. Arkema Inc., BASF Corporation, Carrier Global Corporation, ChemDesign Products, Inc.,

Chemicals Inc., Chubb Fire, LTD., Clariant Corp., Corteva, Inc., Deepwater Chemicals, Inc.,

DuPont De Nemours, Inc., Dynax Corp., Kidde PLC Inc., Nation Ford Chemical Company,

Raytheon Technologies Corporation f/k/a United Technologies Corporation, UTC Fire &

Security Americas Corporation, and John Doe Defendants 1-49 (collectively, "Defendants").

Plaintiff, based on information, belief and investigation of Counsel, alleges as follows:

## I.     SUMMARY OF THE CASE

1.      Plaintiff brings this action against Defendants to recover the considerable costs and

damages that it has incurred, or may incur, as a result of the presence of toxic compounds,

identified as per- and polyfluoroalkyl substances ("PFAS"), in Plaintiff's public water supply.

2.      Plaintiff is a public instrumentality exercising public and essential governmental

functions to provide for the public health and welfare through the distribution of water in Lenoir

County and Pitt County. NRWASA draws water from the Neuse River, treats the water and then

provides the water to its member entities' water distribution systems.

3.      Plaintiff's water supply is currently contaminated with highly toxic PFAS

compounds, including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS").

PFOA and PFOS have long been manufactured as components for aqueous film-forming foam

("AFFF")—a product used to control and extinguish aviation, marine, fuel, and other shallow spill

fires.

4.      PFOA and PFOS both are known to be toxic, persistent in the environment, not biodegrade, move easily through soil and water, and pose a significant risk to human health and safety. Both are animal carcinogens and likely human carcinogens. Indeed, the United States Environmental Protection Agency ("EPA") has stated that "human epidemiology data report associations between PFOA exposure and high cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregnancy- induced hypertension and preeclampsia, and cancer (testicular and kidney)" and that "there is suggestive evidence of carcinogenic potential for PFOS."[1]

5.      Upon information and belief, at various times throughout the 1960s to present date, Defendants designed, manufactured, marketed, distributed, and/or sold PFOA, PFOS, the chemical precursors of PFOA and/or PFOS, and/or AFFF containing PFOA, PFOS, and/or their chemical precursors (collectively, "Fluorosurfactant Products") throughout the United States, including in North Carolina.

6.      At all relevant times, upon information and belief, Defendants knew, or reasonably should have known, about the inherent risks and dangers involved in the use of PFAS compounds in their products—including that both PFOA and PFOS are mobile in water, not easily biodegradable, highly persistent in the environment, and present significant and unreasonable risks to both human health and the environment. Nevertheless, Defendants made a conscious choice to manufacture, market, sale, and otherwise place Fluorosurfactant Products into the U.S. stream of commerce for decades, all while knowing PFAS compounds would be inevitably released into the

---

[1] *See* U.S. Envtl. Protection Agency ("EPA"), Office of Water Health and Ecological Criteria Division, "Health Effects Support Document for Perfluorooctanoic Acid (PFOA)," EPA Document Number: 822-R-16-003, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfoa_hesd_final-plain.pdf (last accessed 6/6/2023); *see also* EPA, Office of Water Health and Ecological Criteria Division,
 "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)," EPA Document Number: 822-R-16- 002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed 6/6/2023).

environment—for instance, in the use of AFFF for fire protection, training, and response activities, even when used in the manners directed and intended by the manufacturer—and concealing their knowledge of the risks involved.

7.    At all relevant times, Plaintiff did not know, nor should it have reasonably known, of the ongoing contamination of its Property through others' use of Defendants' Fluorosurfactant Products, as Defendants did not widely disclose the toxic nature and harmful effects of their Fluorosurfactant Products. Notably, Plaintiff's raw water intake, water sources and supply, water supply and delivery system infrastructure, including any treatment systems, are collectively referred to as "Plaintiff's Property" in this Complaint.

8.    As a result of Defendants' unreasonable acts and omissions, PFAS compounds have migrated to the Neuse River, causing contamination to a critical source of water relied upon by Plaintiff to provide for its citizens and customers, and have contaminated Plaintiff's Property— thereby subjecting Plaintiff, its customers, and the general public to the inherent danger of these chemicals. As the manufacturers and sellers of Fluorosurfactant Products, Defendants are responsible for the PFAS contaminants released into Plaintiff's Property.

9.    Through this action, Plaintiff now seeks to recover all available damages arising from the continuous and ongoing contamination of Plaintiff's Property caused by Defendants' actions as asserted herein. Such damages include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property.

## II.    PARTIES

A.    *PLAINTIFFS*

10.    Neuse Regional Water and Sewer Authority is made up of member agencies located in Lenoir County and Pitt County in North Carolina. NRWASA's headquarters is located at 2811

4

Barrus Road, LaGrange, NC 28551. Plaintiff owns and operates a public water supply system pursuant to the Safe Drinking Water Act, 42 U.S.C. § 300(f), and the reporting system of the U.S. EPA.

11.     NRWASA draws water from the Neuse River, treats the water, then provides the water to its member agencies' water distribution systems.

12.     Plaintiff's members include the following: Town of Ayden, Bell Arthur Water Corporation, Deep Run Water Corporation, Eastern Pines Water Corporation, Town of Grifton, City of Kinston, North Lenoir Water Corporation, and the Town of Pink Hill.

13.     Upon information and belief, Defendants' AFFF products were used for fire-training and fire-fighting activities at sites upstream of NRWASA's water uptake location in the Neuse River, including but not limited to at the Seymour Johnson Air Force Base in Goldsboro, North Carolina.

14.     Plaintiff has a property interest in the water it appropriates, treats, stores, and distributes to its member agencies and ultimately the public, as well as an interest in its raw water intake, piping, distribution system, treatment facilities, and real property.

B.     DEFENDANTS

15.     Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products that have contaminated and continue to contaminate Plaintiff's Property, causing irreparable harm.

16.     3M: Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA

and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

17.      3M is the only company that manufactured and/or sold AFFF containing PFOS.

18.      **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

19.      **AGC AMERICA:** Defendant AGC Chemical Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

20.      **ANGUS:** Defendant Angus Fire maintains corporate headquarters in Bentham, United Kingdom. Angus Fire manufactured, marketed and sold AFFF products that contained PFOA.

21.      **ANSUL:** Defendant Ansul Company is a corporation organized and existing under the laws of the State of Wisconsin. This Defendant manufactured, marketed, and sold AFFF products that contained PFOA.

22.      **ARCHROMA MANAGEMENT LLC:** Defendant Archroma Management, LLC, is a foreign limited liability company registered in Switzerland, with a principal business address of Neuhofstrasse 11, 4153 Reinach, Basel- Land, Switzerland.

23.      **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

24.     **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

25.     **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

26.     **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

27.     **CARRIER:** Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

28.     **CHEM INC.:** Defendant Chemicals Incorporated ("Chem Inc.") is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521.

29.     **CHEMDESIGN:** Defendant Chemdesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

30.     **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold AFFF that contained PFOA.

31.    **CHEMOURS:** Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.

32.    In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

33.    **CHEMOURS FC:** Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability company that conducts business throughout the United States. Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

34.    **CHUBB:** Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to Chubb Fire & Security Ltd., Chubb Security, P.L.C., Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. Chubb is part of UTC Climate, Controls & Security, a unit of United Technologies Corporation.

35.    **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

36.    **CORTEVA:** Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

37.    **DEEPWATER:** Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with its principal place of business located at 196122 E County Road 40, Woodward, Oklahoma 73801.

38.    **DUPONT:** Defendant E. I. Du Pont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

39.    **DUPONT DE NEMOURS:** Defendant DuPont De Nemours, Inc. (f/k/a DowDuPont, Inc.) is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont.

40.    Upon information and belief, Corteva was originally formed in February 2018 as a wholly-owned subsidiary of DowDuPont, Inc. On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off of Corteva. In doing so, DowDuPont, Inc. distributed all issued and outstanding shares of Corteva common stock to DowDuPont, Inc. stockholders by way of a pro-rata dividend. Upon information and belief, following that distribution, Corteva became the direct parent of DuPont, and holds certain DowDuPont, Inc. assets and liabilities.

41.    Following the June 1, 2019 spin-off of Corteva and of another entity, Dow, Inc., DowDuPont, Inc. changed its name to DuPont De Nemours, Inc. ("New DuPont"). Upon information and belief, New DuPont retained assets in the specialty products business lines, as well as the balance of the financial assets and liabilities of DuPont not assumed by Corteva.

42.    **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523.

9

Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

43. **KIDDE PLC:** Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut 06032. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

44. **NATIONAL FOAM:** Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam manufactures the Angus Fire brand of products and is the successor-in-interest to Angus Fire Armour Corporation (collectively, "National Foam/Angus Fire"). This Defendant manufactured and sold AFFF that contained PFOA.

45. **NATION FORD:** Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715.

46. **RAYTHEON TECHNOLOGIES CORP.:** Defendant Raytheon Technologies Corporation (f/k/a United Technologies Corporation) ("Raytheon Tech f/k/a United Tech") is a Delaware corporation with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut 06032.

47. **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

48. Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International P.L.C., an Irish public limited company listed on the New York Stock Exchange

49.    Tyco manufactures the Ansul brand of products and is the successor-in-interest to
the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco
as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times
relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression
products, including AFFF that contained fluorocarbon surfactants containing PFAS.

50.    **UTC:** Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE
Interlogix, Inc.) ("UTC") is a North Carolina corporation with its principal place of business at
3211 Progress Drive, Lincolnton, North Carolina 28092. UTC was a subsidiary of United
Technologies Corporation.

51.    Upon information and belief, Defendant John Does 1-49 were manufacturers and/or
sellers of AFFF products. Although the identities of the John Doe Defendants are currently
unknown, it is expected that their names will be ascertained during discovery, at which time the
Town will move for leave of this Court to add those individuals' actual names to the Complaint as
Defendants.

52.    All of the foregoing Defendants, upon information and belief, have previously
conducted and/or currently conduct their business throughout the United States. Moreover, some of
the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the
state of North Carolina.

53.    Any and all references to a Defendant or Defendants in this Complaint include any
predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

54.    The term "Defendants," without naming any specific one, refers to all Defendants
named in this Complaint jointly and severally. When reference is made to any act or omission of
the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or
representatives of the Defendants committed or authorized such act or omission, or failed to

adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.     JURISDICTION & VENUE

55.     This Court has jurisdiction pursuant to G.S. § 7A-243 because the amount in controversy exceeds twenty-five thousand dollars ($25,000,00).

56.     This Court has jurisdiction over Defendants because, based on information and belief, each is a corporation or other business that has sufficient minimum contacts in North Carolina, or otherwise intentionally avails itself of the North Carolina market either through the distribution or sale of products containing PFAS in the State of North Carolina or by having a manufacturing, distribution or other facility located in North Carolina so as to render the exercise of jurisdiction over it by the North Carolina courts consistent with traditional notions of fair play and substantial justice.

57.     Venue is appropriate in this county pursuant to G.S. §§ 1-76 to 1-80, as facts giving rise to the Plaintiff's causes of action arose in Lenoir County, and the plaintiff is situated in, resides, and does business in this County,

### IV.     FACTUAL ALLEGATIONS

*A.*     *THE PFAS CONTAMINANTS AT ISSUE: PFOA AND PFOS*

58.     Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon

atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

59.     PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

60.     PFOA and PFOS are stable, man-made chemicals.  They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

61.     Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and humanblood serum.[2]

62.     Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[3]

63.     Notably, from the time these two compounds were first produced, information has since emerged showing negative health effects caused by exposure to PFOA and PFOS. According to the EPA, "studies indicate that exposure of PFOA and PFOS over certain levels may result in...developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth

---

[2] *See* Agency for Toxic Substances and Disease Registry, "Per- and Polyfluoroalkyl Substances and Your Health," available at https://www.atsdr.cdc.gov/pfas/health-effects/index.html (last accessed 6/6/2023).

[3] *See* EPA, "Drinking Water Health Advisories for PFOA and PFOS," available at https://www.epa.gov/sdwa/drinking-water-health-advisories-pfoa-and-pfos (last accessed 6/6/2023);

weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g.,

tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other

effects (e.g., cholesterol changes).[4] The EPA has warned that there is suggestive evidence of the

carcinogenic potential for PFOA and PFOS in humans.[5]

64.     Additionally, the EPA has noted that "drinking water can be an additional source

[of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have

contaminated water supplies." In communities with contaminated water supplies, "such

contamination is typically localized and associated with a specific facility, for example [...] an

airfield at which [PFOA/PFOS] were used for firefighting."[6]

65.     EPA continues to research the effects of PFAS.  In June 2022, after evaluating over

400 studies published since 2016 and applying human health risk assessment approaches, tools, and

models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS exposure

at which negative outcomes could occur are much lower than previously understood when the

agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt).  EPA announced

new Interim Updates Health Advisory levels for PFOA of 0.004 ppt and 0.02 ppt for PFOS.[7]


B.     *AQUEOUS FILM-FORMING FOAM (AFFF) WAS A PRODUCT CONTAINING PFOS AND/OR PFOA
AT THE RELEVANT TIME PERIOD*

66.     Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first

developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

---

[4] *See id.*

[5] *See id.*

[6] *See id.*

[7] EPA, "Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)," EPA Document Number 822-F-22-002, available at https://www.epa.gov/system/files/documents/2022-06/technical-factsheet-four-PFAS.pdf (last accessed June 6, 2023).

67.     Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

68.     The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS.  All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

69.     When used as the Defendants intended and directed, the AFFF manufactured and/or sold by the Defendants released PFOA and/or PFOS into the environment.

70.     Once PFOA and PFOS are free in the environment, they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air, surface water and groundwater.

71.     Notably, AFFF can be made without PFOA and PFOS. As such, fluorine-free foams do not release PFOA and/or PFOS into the environment.

72.     Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to the ongoing contamination and damages to Plaintiff's Property.

73.     Defendants' Fluorosurfactant Products have been used for their intended purposes in the process of fire protection, training, and response activities within North Carolina for many years. During these activities, Defendants' Fluorosurfactant Products were used as directed and intended by the manufacturer, which allowed PFOA and PFOS to migrate through the subsurface

and into water, enter into Plaintiff's property, thereby contaminating Plaintiff's property, as well as causing other extensive and ongoing damages to Plaintiff's Property.

74.     Due to the chemicals' persistent nature, among other things, these chemicals have caused, and continue to cause, significant injury and damage to Plaintiff and Plaintiff's Property.

## C.   DEFENDANTS' KNOWLEDGE AND CONCEALMENT OF THE DANGERS INVOLVED

75.     On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with water, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

76.     At all times pertinent herein, Defendants also knew or should have known that PFOA and PFOS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

77.     For instance, in 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[8]

---

[8] *See* Envtl. Working Group ("EWG"), "New Data on Half Life of Perfluorochemicals in Serum," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades (last accessed 6/6/2023) (in particular, please refer to the "Letter from 3M to Office of Pollution Prevention and Toxics," referenced in the article).

78.     By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

79.     In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[9]

80.     Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[10]

81.     Notwithstanding their respective knowledge of the dangers involved with AFFF containing PFOA and/or PFOS, Defendants negligently and carelessly: (1) designed, manufactured, marketed, and/or sold AFFF containing PFOA and/or PFOS; (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil and/or waste water disposal systems), thus improperly permitting PFOA and/or PFOS to contaminate soil, surface water, and groundwater; (3) failed to recall and/or warn users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of soil, surface water, and groundwater contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF

---

[9] *See id.* (in particular, please refer to the "C8 Blood Sampling Results, Births and Pregnancies" Memorandum referenced in the article).

[10] *See id.* (in particular, please refer to the "Organic Fluorine Levels" Memorandum referenced in the article).

containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFOA and/or PFOS.

82.     As a direct result of Defendants' acts alleged in this Complaint, Plaintiff's property has been contaminated, and will continue to be contaminated, with PFOA and PFOS. This has created a significant environmental and public health hazard until such contamination may be remediated. As a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and remediate PFOA and PFOS contamination of its property at significant expense, loss and damage to Plaintiff.

83.     Defendants had a duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products, but they breached this duty. Defendants moreover breached their duty to minimize the environmental harm caused by PFOA and PFOS. Moreover, Defendants failed to warn Plaintiff of the known risks for environmental and health hazards arising from the usage of Defendants' Fluorosurfactant Products in their intended manner for its intended purpose.

D.     THE HARM TO PLAINTIFF RESULTING FROM PFOA AND PFOS CONTAMINATION

84.     PFOA and PFOS have been detected in Plaintiff's water supplies.  On multiple occasions, PFAS have been present at levels above the federally advised Health Advisory Levels for PFOA and PFOS.

85.     The detection and/or presence of PFOA and PFOS, and the threat of further detection and/or presence of PFOA and PFOS, in Plaintiff's Property in varying amounts and at varying times has resulted, and will continue to result, in significant injury and damage to Plaintiff.

It is the contention of Plaintiff that any detectible level of PFOA and/or PFOS in its water source or elsewhere on its property requires investigation, remediation and monitoring.

86.     Plaintiff has conducted and continues to conduct sampling, studies, and investigations related to PFAS, which requires funding by Plaintiff, including costs to conduct sampling, costs for its personnel to supervise the assessments, costs to develop PFAS treatment approaches, and costs to analyze available alternatives.

87.     The invasion of Plaintiff's Property with PFOA and PFOS is continuous and recurring, as new contamination flows regularly and constantly into Plaintiff's Property each day— the result of which is a new harm to the Plaintiff and its property in each and every occurrence.

88.     The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, the limited subterranean supplies of fresh drinking water on which Plaintiff's water system depends. Plaintiff's interests in protecting the quality of its citizens' limited drinking water supplies constitutes a reason for seeking damages sufficient to restore such drinking water supplies to their pre-contamination condition.

89.     Through this action, Plaintiff seeks to recover damages (including but not limited to compensatory, punitive, and/or consequential damages) arising from continuous and ongoing contamination of Plaintiff's Property by Defendants' Fluorosurfactant Products. Such damages moreover include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property.

## FIRST CAUSE OF ACTION
## PUBLIC NUISANCE

90.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

91.    Defendants manufactured, distributed, marketed, and promoted PFAS-containing products, including AFFF, in a manner that created or participated in creating a public nuisance that is harmful to health and obstructs the free use of Plaintiff's Property.

92.    The presence of PFAS interferes with the use of Plaintiff's Property as a source of drinking water supply.

93.    The presence of PFAS causes significant costs, inconvenience and annoyance to Plaintiff, who is charged with supplying potable drinking water to residences, businesses, chapel, public buildings and other users in the Village.

94.    The condition affects a substantial number of people in the community, who rely upon Plaintiff to provide water for residential, commercial, and recreational purposes and interferes with the rights of the public at large to clean and safe drinking water resources and environment.

95.    An ordinary person would be reasonably annoyed or disturbed by the presence in public drinking water of toxic PFAS that endanger human health and degrade water quality.

96.    The seriousness of the environmental and human health risk far outweighs any social utility of Defendants' conduct in manufacturing PFAS and PFAS-containing products and concealing the dangers posed to human health and the environment.

97.    Plaintiff has suffered and will continue to suffer harm that is different from the type of harm suffered by the general public, and Plaintiff has incurred substantial costs to remove PFAS from its water supply.

98.    Plaintiff did not consent to the conduct that resulted in the contamination of Plaintiff's Property.

99.    Defendants' conduct was a substantial factor in causing the harm to Plaintiff.

20

100.    Defendants knew or, in the exercise of reasonable care, should have known that the manufacture and sale of PFAS-containing products was causing the type of contamination now found in and around Plaintiff's Property. Defendants knew that PFAS would contaminate water supplies and are associated with serious illnesses and cancers in humans. Defendants thus knew, or should have known, that PFAS contamination would seriously and unreasonably interfere with the ordinary comfort, use, and enjoyment of public water supply system.

101.    As a direct and proximate result of Defendants' creation of a public nuisance, Plaintiff has suffered, and continues to suffer, monetary damages to be proven at trial.

102.    Defendants' conduct was malicious, oppressive, wanton, willful, intentional, and shocks the conscience, warranting punitive and exemplary damages, because they manufactured, promoted, sold, and supplied PFAS-containing products including AFFF, knowing that these products would release PFAS that are toxic, cannot be contained, and last for centuries.

## SECOND CAUSE OF ACTION
### PRIVATE NUISANCE

103.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

104.    Plaintiff's Property has been contaminated by PFOA and/or PFOS as a direct and proximate result of the acts and omissions of Defendants as set forth above.

105.    PFAS contamination is a substantial and unreasonable interference with the use of Plaintiff's Property to provide potable drinking water. The chemicals contaminate Plaintiff's Property and threaten the health of everyone in the community who relies upon Plaintiff to provide potable water.

106.    PFAS contamination caused by Defendants' conduct has damaged Plaintiff's Property and interfered with the ordinary safety, use, benefit, and enjoyment of Plaintiff's property.

## THIRD CAUSE OF ACTION
## PRODUCTS LIABILITY- INADEQUATE DESIGN (G.S. § 99B-6)

107.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

108.    Plaintiff was harmed by PFAS-containing products including AFFF which were designed, manufactured, sold, and distributed by Defendants, and which were defectively designed, did not include sufficient instructions, and did not include sufficient warning of potential safety hazards.

109.    The design of Defendants' PFAS-containing products were defective because, at the time of the products' manufacture, Defendant acted unreasonably in designing or formulating the products, and this conduct was a proximate cause of the Plaintiff's harm.

110.    In addition, at the time the products left Defendants' control, each Defendant unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the products.

111.    Moreover, at the time the product left Defendants' control, the design or formulation of the products was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.

112.    The design of Defendants' PFAS-containing products caused harm to Plaintiff.

113. The design of Defendants' PFAS-containing products was a substantial factor in causing harm to Plaintiff.

114. The gravity of the huge environmental harm resulting from the use of Defendants' PFAS-containing products was, is, and will be enormous because PFAS contamination is widespread, persistent, and toxic.

115. The likelihood that this harm would occur was, is, and will be very high because Defendants knew and/or should have known that Defendants' PFAS-containing products were toxic, could not be contained, and do not readily degrade in the environment.

116. Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

117. Defendants, their officers, directors, and managing agents, engaged in despicable conduct and acted, or failed to act, with malice, oppression, and fraud, warranting punitive or exemplary damages.

## FOURTH CAUSE OF ACTION
## PRODUCTS LIABILITY- FAILURE TO WARN (G.S. § 99B-5)

118. Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

119. Plaintiff was harmed by PFOA, PFOS, and other PFAS-containing products that Defendants designed, manufactured, sold, and distributed.

120. Defendants' PFAS-containing products were designed, manufactured, sold, and distributed without adequate warning of toxicity, potential human health risks, and environmental hazards.

23

121.     Defendants' PFAS-containing products were designed, manufactured, sold, and distributed without instructions to prevent contamination of soil and water and the resulting potential human health risks and environmental hazards.

122.     The potential environmental hazard and toxicity risks of Defendants' PFAS-containing products were known and/or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific community and/or in light of Defendants' superior knowledge about their products at the time of design, manufacture, sale, and distribution.

123.     The potential environmental hazard and toxicity risks presented an unreasonably dangerous condition when Defendants' PFAS-containing products were and are used or misused in an intended or reasonably foreseeable way, and Defendants knew that this condition posed a substantial risk of harm to reasonably foreseeable users and bystanders including public water providers like Plaintiff.

124.     The risks of PFAS are not a matter of common knowledge. Ordinary consumers and third-parties would not have recognized the potential risks.

125.     Defendants failed to adequately warn or instruct of the potential risks.

126.     Plaintiff was, is, and will be harmed.

127.     The lack of sufficient instructions or warnings was a substantial factor in causing Plaintiff's harm.

128.     Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

129.     Defendants, their officers, directors, and managing agents, engaged in despicable conduct and acted or failed to act with malice, oppression, and fraud, warranting punitive or exemplary damages.

## FIFTH CAUSE OF ACTION
### NEGLIGENCE

130.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

131.    Defendants designed, manufactured, sold, and distributed PFAS-containing products.

132.    Defendants' PFAS-containing products were designed, manufactured, sold, and distributed without adequate warning of toxicity, potential human health risks, and environmental hazards.

133.    Defendants' PFAS-containing products were designed, manufactured, sold, and distributed without instructions to prevent contamination of soil and water and the resulting potential human health risks and environmental hazards.

134.    Defendants were negligent by not using reasonable care to warn or instruct about the risks associated with PFAS-containing products.

135.    Defendants knew or reasonably should have known that their PFAS-containing products were dangerous or likely to be dangerous when used or misused in a reasonably foreseeable manner.

136.    Defendants knew or reasonably should have known that users and third parties would not realize the danger.

137.    At all times, it was reasonably foreseeable to Defendants that, when used as intended, PFAS-containing products would cause contamination of soil and water and would present risks to human and environmental health.

138.    Defendants failed to adequately warn of the danger or instruct on the safe use of PFAS-containing products.

139.    A reasonable chemical manufacturer, seller, distributor, under the same or similar circumstances would have warned of the danger or instructed on the safe use of PFAS-containing products.

140.    Plaintiff was, is, and will be harmed.

141.    Defendants' failure to warn or instruct proximately caused Plaintiff's harm.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (G.S. § 25-2-314)

142.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

143.    At all relevant times, Defendants were in the business of designing, manufacturing, selling, and distributing PFAS-containing products, such as those at issue here.

144.    Defendants warranted that their PFAS-containing products are merchantable.

145.    Defendants designed, manufactured, sold, and distributed PFAS-containing products without adequate warning of toxicity, potential human health risks, and environmental hazards.

146.    Defendants' PFAS-containing products were defective or otherwise unmerchantable when they left Defendants' control.

147.    When used for the ordinary purposes for which such PFAS-containing products were used and intended, PFAS-containing products were defective or otherwise unmerchantable because PFAS compounds escaped from those products, causing contamination of soil and water and presenting risks to human and environmental health.

148.    Defendants breached their implied warranty of merchantability because the goods are not fit for the ordinary purposes for which such goods are used.

149.    Defendants breached their implied warranty of merchantability because the PFAS-containing products were not packaged and labeled with the appropriate warnings about

contamination and resulting health risks or with instructions that would have prevented the contamination.

150.    Defendants became aware of the human health risks and environmental dangers presented by PFAS-containing products by no later than the year 2000.

151.    Plaintiff was, is, and will be harmed.

152.    Defendants' breach of the implied warranty of merchantability proximately caused Plaintiff's harm.

153.    Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

154.    Defendants, their officers, directors, and managing agents, engaged in despicable conduct and acted or failed to act with malice, oppression, and fraud, warranting punitive or exemplary damages.

**SEVENTH CAUSE OF ACTION**
**TRESPASS**

155.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

156.    Plaintiff owns and operates real property including raw water intakes and drinking and associated pumping, storage, treatment and distribution facilities and equipment. Plaintiff has significant property interests in the waters it appropriates and uses, in its distribution infrastructure, and also has significant property interests in the water that supplies its system.

157.    Defendants intentionally, recklessly, and negligently caused PFAS to enter into the surface water and water systems operated by Plaintiff.

158.    Plaintiff did not give permission for the entry.

159.    Plaintiff was, is, and will be actually harmed by the entry of PFAS onto its property.

160.    Defendants' conduct proximately caused Plaintiff's harm.

161.    Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

162.    Defendants, their officers, directors, and managing agents, engaged in despicable conduct and acted or failed to act with malice, oppression, and fraud, warranting punitive or exemplary damages.

### EIGHTH CAUSE OF ACTION
### CIVIL CONSPIRACY

163.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

164.    At all times relevant to this lawsuit, Defendants actually knew of the hazards that PFOA and PFOS posed to the environment, including Plaintiff's Property.

165.    Beginning in the 1960s and continuing through the date of the filing of this Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to the Plaintiff. Each Defendant performed at least one overt act in furtherance of this conspiracy. Specifically, Defendants colluded for the avowed purpose of providing information about AFFF products containing PFOA and/or PFOS to the public and the government, with the true, unlawful purpose of:

    a. intentionally misrepresenting to the EPA and the public that AFFF containing PFOA and/or PFOS was safe and did not pose a risk to human health and the environment;

    b. concealing the dangers of AFFF containing PFOA and/or PFOS, including the

28

products' characteristics and their propensity to contaminate soil, surface water, and groundwater, from the government and public by, among other means, repeatedly misrepresenting how products containing PFOA and/or PFOS were being disposed of;

c. concealing the dangers of PFOA and/or PFOS from consumers and the public; and

d. using their considerable resources to fight legislation concerning PFOA and PFOS.

166.    As a direct and proximate result of Defendants' conspiracy, Defendants' AFFF products at all times relevant to this litigation have:

a.    posed and continue to pose a threat to Plaintiff's Property;

b.    contaminated and will continue to contaminate Plaintiff's Property;

c.    contaminated and will continue to contaminate the soil, surface water and groundwater feeding the surface water within the vicinity of Plaintiff's Property;

d.    required and will continue to require testing and monitoring of Plaintiff's Property for PFOA and PFOS contamination;

e.    required or will require remediation of PFOA and PFOS contamination or, where remediation is impracticable or insufficient for Plaintiff, removal and disposal of the contamination;

f.    diminished Plaintiff's confidence in, and the use and enjoyment of, Plaintiff's Property;

g.    diminished Plaintiff's Property value due to actual, impending, and/or threatened PFOA and PFOS contamination; and

h.  caused and/or will cause Plaintiff to sustain substantially increased damages and

expenses resulting from the loss of the safety, use, benefit and/or enjoyment of its

property.

## NINTH CAUSE OF ACTION
## FRAUDULENT TRANSFER (DUPONT AND CHEMOURS)

167.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding

paragraphs as if fully restated in this count.

168.    Plaintiff seeks equitable and other relief pursuant to the Uniform Fraudulent

Transfer Act or other applicable law against DuPont.

169.    Upon information and belief, in February 2014, DuPont formed The Chemours

Company as a wholly-owned subsidiary, and used it to spin off DuPont's "Performance

Chemicals" business line in July 2015.

170.    Upon information and belief, at the time of the spinoff, DuPont's Performance

Chemicals division contained the AFFF and/or PFAS business segments. In addition to the transfer

of the Performance Chemicals division, Chemours accepted broad assumption of liabilities for

DuPont's historical use, manufacture, and discharge of PFAS.

171.    Upon information and belief, at the time of the transfer of its Performance

Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had

knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and

injuries from the manufacture and sale of PFAS compounds and products that contain PFAS

compounds.

172.    Upon information and belief, as a result of the transfer of assets and liabilities

described in this Complaint, DuPont limited the availability of assets to cover judgements for all of

the liability for damages and injuries from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

173.    Upon information and belief, DuPont has (a) acted with intent to hinder, delay and defraud parties, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably small in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

174.    Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of parties, such as the Plaintiff, that have been damaged as a result of DuPont's actions as described in this Complaint.

175.    Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

176.    Plaintiff seeks to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severally liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

177.    Plaintiff further reserves such other rights and remedies that may be available to it as may be necessary to fully compensate Plaintiff for the damages and injuries it has suffered as alleged in this Complaint.

## PUNITIVE DAMAGES

178.    Under the applicable laws of the State of North Carolina, Plaintiff seeks Punitive damages due to the wanton and willful acts and/or omissions of Defendants as set forth and alleged in this Complaint.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.    Compensatory damages according to proof including, but not limited to:

   a.    costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination on and within Plaintiff's Property;

   b.    costs and expenses related to the past, present, and future treatment and remediation of PFAS contamination of Plaintiff's Property or, in the alternative, the costs and expenses associated with and related to the removal and disposal of the contamination;

   c.    costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS on and within Plaintiff's Property; and

   d.    Avoiding the transfer of DuPont's liabilities for the claims brought in this Complaint;

2.    Punitive damages;

3.    Consequential damages;

4.    Costs, disbursements and attorneys' fees of this lawsuit;

5.    Pre-judgment and post-judgment interest; and

6.      Any other and further relief as the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial.

Dated:  June 8, 2023

_____

A. Charles Ellis (NC Bar No. 10865)
**WARD AND SMITH, P.A.**
Post Office Box 8088
Greenville, NC 27835-8088
Telephone: 252-215-4009
ace@wardandsmith.com

Scott Summy (NC Bar No. 27171)
Jason Julius (TX Bar No. 24131101)
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605
ssummy@baronbudd.com
jjulius@baronbudd.com

Philip F. Cossich, Jr.
Brandon J. Taylor (LA Bar No. 27662)
Christina M. Cossich (LA Bar No. 32407)
Andrew Cvitanovic (LA Bar No. 34500)
**COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC**
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Telephone: (504) 394-9000

J. Harold Seagle (NC Bar No. 8017)
**Seagle Law, PLLC**
Post Office Box 15307
Asheville, NC 28813
haroldseagle@charter.net
828-545-7777

ND:4867-0618-0712, v. 1

# STATE OF NORTH CAROLINA

LENOIR _____ County

FILED

2023 JUN -8 P 1:02

LENOIR CO. C.S.C.

BY ___ DBD ___

File No. 23 CVS 431

In The General Court Of Justice
☐ District  ☒ Superior Court Division

Name And Address Of Plaintiff 1
NEUSE REGIONAL WATER AND SEWER AUTHORITY
c/o Barton & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219

Name And Address Of Plaintiff 2

## GENERAL
## CIVIL ACTION COVER SHEET

☒ INITIAL FILING   ☐ SUBSEQUENT FILING

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

**VERSUS**

Name And Address Of Defendant 1
3M Company (f/k/a Minnesota Mining and Manufacturing, Co.)
c/o Corporation Service Company
2626 Glenwood Avenue, Suite 550
Raleigh, NC 27609

Summons Submitted  ☒ Yes  ☐ No

Name And Address Of Defendant 2
Angus Fire

Summons Submitted  ☒ Yes  ☐ No

Name And Address Of Attorney Or Party, If Not Represented
(complete for initial appearance or change of address)
A. Charles Ellis
Ward and Smith, P.A.
Post Office Box 8088
Greenville, NC 27835

Telephone No. 252.215.4000   Cellular Telephone No.

NC Attorney Bar No. 010865   Attorney Email Address  ace@wardandsmith.com

☒ Initial Appearance in Case   ☐ Change of Address

Name Of Firm   Fax No. 252.215.4077

Counsel For
☒ All Plaintiffs  ☐ All Defendants  ☐ Only: (list party(ies) represented)

☒ Jury Demanded In Pleading  ☐ Complex Litigation  ☐ Stipulate to Arbitration

**TYPE OF PLEADING**

(check all that apply)

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) (see Note)
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNFJ)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) Assess Court Costs
☐ Crossclaim (list on back) (CRSS) Assess Court Costs
☐ Dismiss (DISM) Assess Court Costs
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint (list Third Party Defendants on back) (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other (specify and list each separately)

NOTE: All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.

(Over)

AOC-CV-751, Rev. 3/19, © 2019 Administrative Office of the Courts

## CLAIMS FOR RELIEF

- ☐ Administrative Appeal (ADMA)
- ☐ Appointment Of Receiver (APRC)
- ☐ Attachment/Garnishment (ATTC)
- ☐ Claim And Delivery (CLMD)
- ☐ Collection On Account (ACCT)
- ☐ Condemnation (CNDM)
- ☐ Contract (CNTR)
- ☐ Discovery Scheduling Order (DSCH)
- ☐ Injunction (INJU)

- ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP)
- ☐ Medical Malpractice (MDML)
- ☐ Minor Settlement (MSTL)
- ☐ Money Owed (MNYO)
- ☐ Negligence - Motor Vehicle (MVNG)
- ☐ Negligence - Other (NEGO)
- ☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN)
- ☐ Possession Of Personal Property (POPP)

- ☒ Product Liability (PROD)
- ☐ Real Property (RLPR)
- ☐ Specific Performance (SPPR)
- ☒ Other *(specify and list each separately)*
  Public Nuisance; Private Nuisance;
  Breach of Implied Warranty of
  Merchantability; Trespass; Civil
  Conspiracy; Fraudulent Transfer

| Date | Signature Of Attorney/Party |
|------|------------------------------|
| June 8, 2023 | *Charles Ellis* |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|-----|----------------------------|
|     |                            |
|     |                            |
|     |                            |
|     |                            |
|     |                            |
|     |                            |

| No. | ☒ Additional Defendant(s)    ☐ Third Party Defendant(s)<br>See attached sheet for additional Defendants | Summons Submitted |
|-----|--------------------------------------------------------------------------------------|--------------------|
| 3 | AGC CHEMICAL AMERICAS, INC. | ☒ Yes  ☐ No |
| 4 | AGC INC. f/k/a ASAHI GLASS CO. | ☒ Yes  ☐ No |
| 5 | ARCHROMA MANAGEMENT LLC | ☒ Yes  ☐ No |
| 6 | ARCHROMA US, INC. | ☒ Yes  ☐ No |
| 7 | ARKEMA, INC. | ☒ Yes  ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

|   |
|---|
|   |
|   |
|   |

*Defendant(s) Against Whom Crossclaim Asserted*

|   |
|---|
|   |
|   |
|   |

## ATTACHMENT TO COVER SHEET

| | DEFENDANTS | SUMMONS SUBMITTED |
|---|---|---|
| 8 | BASF CORPORATION | Yes |
| 9 | BUCKEYE FIRE PROTECTION CO. | Yes |
| 10 | CARRIER GLOBAL CORPORATION | Yes |
| 11 | CHEMDESIGN PRODUCTS, INC. | Yes |
| 12 | CHEMGUARD | Yes |
| 13 | CHEMICALS INC. | Yes |
| 14 | CHUBB FIRE, LTD. | Yes |
| 15 | CLARIANT CORP. | Yes |
| 16 | CORTEVA, INC. | Yes |
| 17 | DEEPWATER CHEMICALS, INC. | Yes |
| 18 | DOE DEFENDANTS, JOHN 1-49 | Yes |
| 19 | DUPONT DE NEMOURS, INC. | Yes |
| 20 | DYNAX CORP. | Yes |
| 21 | E.I. DU PONT DE NEMOURS & COMPANY | Yes |
| 22 | KIDDE PLC INC. | Yes |
| 23 | NATIONAL FOAM, INC. | Yes |
| 24 | NATION FORD CHEMICAL COMPANY | Yes |
| 25 | RAYTHEON TECHNOLOGIES CORPORATION f/k/a UNITED TECHNOLOGIES CORPORATION | Yes |
| 26 | THE ANSUL COMPANY | Yes |
| 27 | THE CHEMOURS COMPANY | Yes |
| 28 | THE CHEMOURS COMPANY FC, LLC | Yes |
| 29 | TYCO FIRE PRODUCTS, LP | Yes |
| 30 | UTC FIRE & SECURITY AMERICAS CORPORATION | Yes |

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

NEUSE REGIONAL WATER AND SEWER AUTHORITY

## DEFENDANTS

3M COMPANY, et al

**(b)** County of Residence of First Listed Plaintiff   Lenoir
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

A. Charles Ellis, Ward & Smith, P. O. Box 8088, Greenville, NC 27835; PH: (252) 215-4000

Attorneys *(If Known)*

Christopher J. Blake of Nelson Mullins Riley & Scarborough LLP, 301 Hillsborough Street, Suite 1400, Raleigh NC 27612 Ph: (919) 329-3800

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [x] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. section 1442(a)(1) and 1446

Brief description of cause:
Contamination of natural resources due to manufacture of AFFF products

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $     CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE    07/11/2023      SIGNATURE OF ATTORNEY OF RECORD    /s/ Christopher J. Blake

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)    Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)    County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)    Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.    Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.